IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff**, | Case No. 23-20022-02-DDC |
| v. | |
| **JAVIER GONZALEZ (02)**, | |
| **Defendant**. | |

**MEMORANDUM AND ORDER**

On April 18, 2025, a jury convicted defendant Javier Gonzalez on a series of drug charges. Doc. 173. At the close of the government's case-in-chief, Mr. Gonzalez orally moved for judgment of acquittal. The court reserved decision on the motion, as permitted under Rule 29 of the Federal Rules of Criminal Procedure. Mr. Gonzalez didn't file any papers on his motion, either during or after trial, and the time to do so now has passed. This Order denies Mr. Gonzalez's Motion for a Judgment of Acquittal. This Order explains the court's reasoning, below. The Order also takes up an additional issue on its own motion.

After trial, the court noticed a likely error in one of the jury instructions. This Order notifies the parties of that apparent error. But Mr. Gonzalez failed to object to this erroneous instruction or file a timely motion for relief. So the court has no power to grant Mr. Gonzalez relief even if he suffered prejudice, which he likely did not.

The court explains its judgment-of-acquittal ruling, followed by an analysis of the potentially erroneous jury instruction. But first, start with some background on the government's case against Mr. Gonzalez.

I.      Background

After Mr. Gonzalez absconded pending trial, a grand jury returned a Superseding Indictment. Doc. 139. It charged Mr. Gonzalez with failure to appear after pre-trial release, as well as four controlled-substance offenses—conspiracy to distribute or possess with the intent to distribute methamphetamine, possessing with intent to distribute methamphetamine, and two counts of distributing methamphetamine. *Id.* Mr. Gonzalez pleaded guilty to the failure-to-appear charge, Doc. 156, and proceeded to trial on the four drug charges. At the close of the government's case-in-chief, Mr. Gonzalez moved for a judgment of acquittal. The court deferred ruling, as Rule 29 permits. *See* Fed. R. Crim. P. 29(b) ("The court may reserve decision on the motion, proceed with the trial . . . submit the case to the jury, and decide the motion . . . after [the jury] returns a verdict of guilty or is discharged[.]"). Mr. Gonzalez then put on evidence. The jury returned a guilty verdict on all counts. Doc. 173.

II.     Evidence Presented at Trial

At trial, the government presented testimony from a series of law enforcement officers. The officers' testimony relied on direct observations, pole-camera surveillance, and cell-phone-location tracking. The court reviews this evidence briefly, below, before analyzing its sufficiency under Rule 29.

The jury first heard about a controlled purchase on January 22, 2023. Officers testified that a confidential informant arranged to purchase four ounces of methamphetamine from Steven Crawford—one of Mr. Gonzalez's co-defendants who pleaded guilty before trial. The confidential informant drove to a hotel and picked up Mr. Crawford, hoping to consummate the purchase agreement. But Mr. Crawford didn't have any methamphetamine with him and directed the informant to drive to 2834 North 42nd Street—Mr. Gonzalez's residential address. (Mr. Gonzalez lived in a trailer behind the main house at the 2834 property.) Mr. Crawford

walked onto the property and returned with methamphetamine, which he sold to the informant. After this controlled purchase, ATF agents set up a pole camera to surveil the property where Mr. Gonzalez lived.

An undercover agent set up another deal with Mr. Crawford for March 2, 2023—the same date the Superseding Indictment charges Mr. Gonzalez with distribution of methamphetamine, Doc. 139 at 3 (Count Three). Shortly after the agent contacted him, Mr. Crawford traveled from his residence to Mr. Gonzalez's residence—information that law enforcement officers derived from Mr. Crawford's cell-phone pings. Law enforcement officers observed Mr. Crawford park his vehicle and again walk around to the back of the residence. Minutes later Mr. Crawford returned, walking back to his vehicle with Mr. Gonzalez in tow. Mr. Gonzalez got in Mr. Crawford's car with him. The two made a stop at 7250 Riverview Avenue, the home of co-defendant Gabriel Venegas. After making that stop, they then met the undercover agent at a McDonald's. There, Mr. Crawford exchanged one pound of methamphetamine—packaged in a distinctive pink gift bag—for $3,000.

The final controlled purchase took place on March 28, 2023—another date the Superseding Indictment charges Mr. Gonzalez with distributing methamphetamine. Doc. 139 at 3 (Count Four). The undercover agent arranged to buy one pound of methamphetamine from Mr. Crawford for $3,000. Mr. Crawford first went to 2834 North 42nd Street, and he again walked around to the back part of the property. He returned to his vehicle a few minutes later and directed the undercover agent to meet him at a nearby Burger King. When Mr. Crawford arrived at the Burger King, he told the undercover agent to follow him. Both the undercover agent and Mr. Crawford returned to the 2834 property. Officers testified that it was apparent that they were waiting for the narcotics to arrive (evidently from Olathe). So, the undercover agent

drove to a gas station and then returned about 20 or 30 minutes later. The source still hadn't arrived. The undercover agent asked Mr. Crawford if he could call his source, Mr. Venegas. Mr. Crawford explained that he couldn't because Mr. Venegas doesn't speak English. When the undercover agent asked Mr. Crawford how he communicates with Mr. Venegas, Mr. Crawford explained that "my dude here"—seemingly a reference to Mr. Gonzalez—communicates with Mr. Venegas. The government also presented video evidence of this interaction between Mr. Crawford and the undercover agent.

Eventually, Mr. Venegas arrived at the property. He exited his vehicle and walked to the backyard of the 2834 property. Mr. Crawford followed him. A few minutes later, Mr. Crawford returned to the front of the residence and handed the methamphetamine—packaged in the same distinctive pink gift bag as the earlier sale—to the undercover agent. One of the law enforcement officers explained that the bag was unique and that she never had seen it used in her time investigating drug crimes.

The jury also heard testimony from Mr. Venegas, one of Mr. Gonzalez's co-defendants, who pleaded guilty to distributing methamphetamine. Mr. Venegas testified that he distributed methamphetamine to Mr. Gonzalez. Specifically, Mr. Venegas testified that he sold half-kilo or kilo quantities of methamphetamine to Mr. Gonzalez on five occasions. He also explained that he would "front" the drugs to Mr. Gonzalez. In other words, Mr. Venegas would provide methamphetamine to Mr. Gonzalez on credit, and Mr. Gonzalez would repay Mr. Venegas after reselling the methamphetamine to others. Mr. Venegas told the jury that he and Mr. Gonzalez had an understanding that Mr. Gonzalez would sell the methamphetamine to pay off his debt to Mr. Venegas.

During Mr. Venegas's testimony, the government admitted this picture:

4



Gov't Ex. 117 (altered to highlight witnesses' identification of Mr. Gonzalez). The pole camera captured this picture on January 28, 2023, the date the Superseding Indictment charges Mr. Gonzalez with possessing methamphetamine with the intent to distribute it. Doc. 139 at 2 (Count Two). Mr. Venegas told the jury that the photograph showed a man holding a gift bag—the same style of bag that he had used to deliver methamphetamine to his customers. He told the jury that he never put anything other than methamphetamine in those bags. One of the government's agents testified that his review of the pole camera surveillance revealed that the man holding the bag was Mr. Gonzalez and that Mr. Gonzalez was holding the same distinctive bag that Mr. Crawford had used in his sales to the undercover agent. Mr. Venegas also testified that he didn't recognize Mr. Crawford and that he never had sold methamphetamine to Mr. Crawford.

### III.  Legal Standard

To decide a Rule 29 sufficiency-of-the-evidence challenge, the court looks "at 'the evidence in the light most favorable to the government to determine whether a rational trier of

fact could have found the elements of the offense beyond a reasonable doubt.'" *United States v. Tao*, 107 F.4th 1179, 1184 (10th Cir. 2024) (quoting *United States v. Johnson*, 821 F.3d 1194, 1201 (10th Cir. 2016)).  In conducting its review, the court doesn't "decide credibility issues or reweigh the evidence." *Johnson*, 821 F.3d at 1201.  "The only question is 'whether the government's evidence, credited as true, suffices to establish the elements of the crime.'" *Id.* (quoting *United States v. Hutchinson*, 573 F.3d 1011, 1033 (10th Cir. 2009)).  As specified in Rule 29, the court "decide[s] the motion on the basis of the evidence at the time the ruling was reserved"—here, at the end of the government's case-in-chief.  Fed. R. Crim. P. 29(b).

IV.     **Analysis**

    A.     **Count One – Conspiracy**

Start with Count One of the Superseding Indictment, which charged Mr. Gonzalez with conspiring to distribute and possess with the intent to distribute methamphetamine between January 1, 2023, and May 4, 2023.  Doc. 139 at 1; 21 U.S.C. § 846.  To prove Mr. Gonzalez guilty of this crime beyond a reasonable doubt, the government had to adduce evidence of the following elements:

(1) beginning on or about January 1, 2023, and continuing to on or about May 4, 2023, two or more persons agreed to distribute methamphetamine or possess with the intent to distribute methamphetamine;

(2) Mr. Gonzalez knew the essential objective of the conspiracy;

(3) Mr. Gonzalez knowingly and voluntarily participated in the conspiracy;

(4) there was interdependence among the members of the conspiracy; and

(5) the overall scope of the conspiracy involved at least a measurable quantity of methamphetamine.

Doc. 171 at 11 (Jury Instructions for conspiracy charge in Count One); Tenth Circuit Pattern Jury Instruction § 2.87; *see also United States v. Cushing*, 10 F.4th 1055, 1065 (10th Cir. 2021) (reciting elements of conspiracy).

The government offered evidence permitting a reasonable trier of fact to find each of these elements beyond a reasonable doubt. Mr. Venegas testified that he "fronted" methamphetamine to Mr. Gonzalez. And he testified that Mr. Gonzalez turned around and sold that methamphetamine to others to pay off the drug debt he owed to Mr. Venegas. Credited as true, such testimony alone suffices to justify the conspiracy conviction. *See United States v. Caldwell*, 589 F.3d 1323, 1330 (10th Cir. 2009) ("Our court has previously held that providing drugs on credit can be sufficient to demonstrate a conspiracy to distribute drugs."); *Cushing*, 10 F.4th at 1069–70 (rejecting conspiracy sufficiency-of-the-evidence challenge where defendant "not only purchased large amounts of methamphetamine from [co-conspirator] on credit but also turned around and sold it to others"). It demonstrates that Mr. Gonzalez and Mr. Venegas agreed to distribute narcotics; that Mr. Gonzalez knew that objective; that he participated in consummating that objective knowingly and voluntarily; that the two members of the conspiracy depended on each other; and that their conspiracy involved measurable quantities of methamphetamine.

Mr. Gonzalez primarily argued that the evidence wasn't sufficient because it merely demonstrated that Mr. Gonzalez knew about a conspiracy and associated with Mr. Venegas and Mr. Crawford. He also argued that Mr. Venegas's testimony wasn't credible and that other evidence contradicted Mr. Venegas's testimony. Neither argument is availing. *First*, Mr. Venegas's testimony went well beyond merely alleging that Mr. Gonzalez knew about the conspiracy or associated with its members. To the contrary, Mr. Venegas incriminated Mr.

7

Gonzalez as an indispensable link when he explained that he sold drugs to Mr. Gonzalez on credit and that Mr. Gonzalez then sold those drugs to others to finance the credit. *See United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996) ("Evidence that an intermediate distributor bought from a supplier might be sufficient to link that buyer to a conspiracy to distribute drugs because both buyer and seller share the distribution objective." (quotation cleaned up)). *Second*, in performing its Rule 29 review, the court doesn't "decide credibility issues or reweigh the evidence." *Johnson*, 821 F.3d at 1201. So even if Mr. Venegas had an incentive to lie or if his testimony contradicted other evidence, the court must credit it as true. *See id.* at 1201–02. Doing so, the court concludes that a rational jury could convict Mr. Gonzalez of violating 21 U.S.C. § 846.

An entirely separate theory also supports the jury's conviction on this count. On March 28, when Mr. Crawford and the undercover agents were waiting for Mr. Venegas to arrive, Mr. Crawford explained that he didn't communicate with Mr. Venegas directly. Instead, he used Mr. Gonzalez as an intermediary. Granted, he didn't identify Mr. Gonzalez by name. But a jury reasonably could infer that Mr. Crawford's reference to "my dude here" alluded to Mr. Gonzalez. This inference is especially reasonable because Mr. Crawford and the agent were at the property where Mr. Gonzalez lived when Mr. Crawford referred to "my dude here." A rational trier of fact could infer that Mr. Gonzalez conspired with Mr. Crawford to distribute methamphetamine or possess with the intent to distribute methamphetamine when he served as a translator to facilitate Mr. Crawford's distribution enterprise.

And that's not all. Other evidence supports the inference of a conspiracy between Mr. Gonzalez and Mr. Crawford. For instance, Mr. Gonzalez rode along with Mr. Crawford to Mr. Venegas's residence and then to meet the undercover officer at McDonald's—where Mr.

8

Crawford dispensed methamphetamine to the undercover officer. Viewed in the light most favorable to the government, *Tao*, 107 F.4th at 1184, this evidence corroborates the government's allegation that Mr. Gonzalez knowingly participated in an unlawful agreement to distribute methamphetamine. In short, the court rejects Mr. Gonzalez's sufficiency-of-the-evidence challenge for the charge in Count One of the Superseding Indictment. The court addresses the charge in Count Two, next.

### B.     Count Two – Possession with Intent to Distribute

To prove that Mr. Gonzalez possessed methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), the government needed to establish the following elements beyond a reasonable doubt:

(1) Mr. Gonzalez knowingly or intentionally possessed a controlled substance on or about January 28, 2023, as charged;

(2) the substance was in fact methamphetamine; and

(3) Mr. Gonzalez possessed the substance with the intent to distribute it.

Doc. 171 at 15 (Jury Instructions for charge in Count Two); Tenth Circuit Pattern Jury Instruction § 2.85; *United States v. Bowen*, 437 F.3d 1009, 1014 (10th Cir. 2006) (reciting same elements for 21 U.S.C. § 841(a)(1) violation).

Mr. Gonzalez argued that there's no evidence that he possessed a controlled substance. He argued that the bag he held on January 28 was never seized or tested and that there's no evidence from which a reasonable jury could infer that Mr. Gonzalez knowingly possessed a controlled substance. The court disagrees. To be sure, the photograph of Mr. Gonzalez holding the bag isn't abundantly clear. Similarly, Mr. Gonzalez is right: the government never seized or tested anything in the bag to prove definitively that it contained methamphetamine. Still, the jury heard testimony from both a detective and Mr. Venegas, and they both identified the bag in

9

the photo as matching the distinctive bags that Mr. Venegas used for his methamphetamine sales. Mr. Venegas also testified that he never put anything other than methamphetamine in those bags. And he explained that that he sold Mr. Gonzalez distribution-level quantities of methamphetamine on credit multiple times.

A rational trier of fact could credit that testimony, and reasonably infer that the bag contained an appreciable quantity of methamphetamine. *See United States v. Goldesberry*, 128 F.4th 1183, 1192 (10th Cir. 2025) (explaining that on sufficiency-of-the-evidence review the court must consider "inferences reasonably and logically flowing from other evidence adduced at trial" (internal quotation marks and citation omitted)). So even if there's some outside chance that the bag that Mr. Gonzalez was holding *didn't* contain narcotics, it doesn't compel a different result here. *See United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) ("[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." (internal quotation marks and citation omitted)). In short, the jury reasonably could have concluded that the bag that Mr. Gonzalez held contained methamphetamine.

Mr. Gonzalez also argued that no evidence supported the "knowing" requirement of the first element. But the totality of the facts surrounding the events on January 28 supports a reasonable inference that Mr. Gonzalez knew he possessed methamphetamine. *See United States v. Porter*, 928 F.3d 947, 957 (10th Cir. 2019) ("[T]he jury is permitted to draw inferences of subjective intent from a defendant's objective acts and statements." (internal quotation marks and citation omitted)); *United States v. Johnson*, 971 F.2d 562, 566 (10th Cir. 1992) ("Direct evidence of a defendant's intent is seldom available. Intent can be proven, however, from surrounding circumstances."). The forensic extraction of Mr. Venegas's phone showed that Mr.

Crawford's phone called Mr. Venegas's phone on January 28, shortly before the pole camera captured the photograph of Mr. Gonzalez holding the distinctive bag. So, the jury received evidence that (1) all three co-defendants in this case—Mr. Gonzalez, Mr. Crawford, and Mr. Venegas—were present on the property on January 28; (2) Mr. Crawford and Mr. Venegas didn't communicate directly and instead used Mr. Gonzalez as an intermediary; (3) Mr. Venegas sold methamphetamine to Mr. Gonzalez on credit multiple times; (4) Mr. Venegas used the distinctive gift bags to package methamphetamine and never put anything other than methamphetamine in the gift bags; and (5) Mr. Gonzalez held the distinctive bag on the day in question. These facts collectively support a logical inference that Mr. Gonzalez knowingly possessed methamphetamine. *See Porter*, 928 F.3d at 957.

Likewise, the government adduced sufficient evidence for a rational jury to conclude that Mr. Gonzalez intended to distribute the methamphetamine he possessed. Two facts admitted in evidence support such a conclusion. *First*, Mr. Venegas testified that he sold Mr. Gonzalez half-kilo and kilo quantities of methamphetamine. A "jury may infer intent to distribute from the possession of large quantities of drugs." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004). *Second*, Mr. Venegas testified that he sold methamphetamine to Mr. Gonzalez on credit. *See United States v. Small*, 423 F.3d 1164, 1184 (10th Cir. 2005) (explaining that a "fronting arrangement strongly suggests that [defendant] was expected to redistribute the fronted drugs for profit"). Each of these facts suffices to find that Mr. Gonzalez intended to distribute the methamphetamine that he possessed. Mr. Gonzalez doesn't argue otherwise.

This amalgamation of facts and inferences permitted a rational factfinder to convict Mr. Gonzalez on the charge in Count Two of the Superseding Indictment. The court moves on to Count Three, next.

C.     **Count Three – Distribution on March 2**

To prove that Mr. Gonzalez distributed methamphetamine as charged in Count Three of the Superseding Indictment, the government needed to establish just two elements beyond a reasonable doubt: (1) Mr. Gonzalez knowingly or intentionally distributed a controlled substance on or about March 3, 2023; and (2) the substance was in fact methamphetamine. Doc. 171 at 16 (Jury Instructions for charges in Count Three and Count Four); Tenth Circuit Pattern Jury Instructions § 2.85.1.

The government's case-in-chief furnished sufficient evidence for a rational jury to convict Mr. Gonzalez on Count Three. Recall that the March 2 controlled purchase was the one where Mr. Gonzalez rode with Mr. Crawford to McDonald's. Once there, Mr. Crawford exchanged the bag of methamphetamine for cash with the undercover agent. A rational trier of fact could have convicted Mr. Gonzalez either as an aider and abettor or under *Pinkerton* liability.

The jury could convict Mr. Gonzalez under 18 U.S.C. § 2(a), which provides that anyone who "aids, abets, counsels, commands, induces[,] or procures" someone to commit an offense "is punishable as a principal." The jury received evidence that Mr. Crawford travelled to Mr. Gonzalez's residence immediately after the undercover agent arranged the purchase. And the two men then went to Mr. Venegas's residence at 7250 Riverview before proceeding to make the methamphetamine sale to the undercover agent at nearby McDonald's. Recall also that the government showed the jury a video, where Mr. Crawford explained that he didn't speak Spanish and couldn't communicate directly with Mr. Venegas. Instead, Mr. Crawford used Mr. Gonzalez to communicate with Mr. Venegas for him. Taken together, those facts support a reasonable inference that Mr. Gonzalez intentionally facilitated distribution of methamphetamine from Mr.

Venegas to Mr. Crawford, and also facilitated distribution of methamphetamine from Mr. Crawford to the undercover agent. After all, why else was Mr. Gonzalez riding along with Mr. Crawford to go to Mr. Venegas's residence and then to McDonald's to make the sale? Sure, an innocuous answer to that question might exist. But on this sufficiency-of-the-evidence review, the court needn't conclude that the evidence "conclusively exclude[s] every other reasonable hypothesis[.]" *Wood*, 207 F.3d at 1228 (internal quotation marks and citation omitted). In short, the government put forth sufficient evidence to convict Mr. Gonzalez of aiding and abetting distribution of methamphetamine on March 2, 2023.

Alternatively, the government's evidence sufficed to convict Mr. Gonzalez under *Pinkerton* liability. Under this theory of liability, "'conspirators are responsible for crimes committed within the scope of the unlawful project and thus reasonably foreseeable as a necessary or natural consequence of the unlawful agreement.'" *United States v. Rosalez*, 711 F.3d 1194, 1207 (10th Cir. 2013) (quoting *United States v. Cherry*, 217 F.3d 811, 817 (10th Cir. 2000)). As already discussed, a reasonable factfinder could convict Mr. Gonzalez for conspiring with Mr. Crawford to distribute narcotics. Mr. Crawford's subsequent distribution of methamphetamine thus is a "necessary or natural consequence of the unlawful agreement" between the men. *Id.* A jury rationally could have convicted Mr. Gonzalez of distributing methamphetamine on March 2 on this basis, as well.

Under either theory—aiding and abetting or *Pinkerton* liability—the government's evidence sufficed to convict Mr. Gonzalez. So the court denies Mr. Gonzalez's request to acquit him on the charge in Count Three. The court takes up the charge in the final count, next.

    **D.**    **Count Four – Distribution on March 28**

As with the charge in Count Three, for a jury to convict Mr. Gonzalez of the charge in Count Four, the government needed to offer evidence to prove these two elements beyond a

reasonable doubt: (1) Mr. Gonzalez knowingly or intentionally distributed a controlled substance on or about March 28, 2023; and (2) the substance was in fact methamphetamine. Doc. 171 at 16 (Jury Instructions for charges in Count Three and Count Four); Tenth Circuit Pattern Jury Instructions § 2.85.1.

Recall this date, Mr. Crawford directed the undercover agent to Mr. Gonzalez's residence. But when the undercover agent arrived at the property and gave Mr. Crawford money for methamphetamine, Mr. Crawford told her that they still were waiting for the drugs to arrive from Olathe. And when the agent asked Mr. Crawford if he could call his source—Mr. Venegas—Mr. Crawford told the agent that his source didn't speak English and that Mr. Crawford used "my dude here"—Mr. Gonzalez—to communicate with Mr. Venegas. Eventually, Mr. Venegas arrived on the property. Mr. Crawford followed Mr. Venegas to the backside of the property but never interacted with him. And eventually, Mr. Crawford returned to the front of the property and provided the undercover agent the methamphetamine that she had purchased. The case agent testified that Mr. Gonzalez was present on the property during this whole transaction, a fact he knew from pole-camera surveillance.

As with the March 2 controlled purchase, the government's evidence sufficed to convict Mr. Gonzalez of distributing methamphetamine on March 28, 2023, under either an aiding-and-abetting theory or under *Pinkerton* liability. A reasonable jury could convict Mr. Gonzalez of aiding and abetting distribution of methamphetamine for the same reasons as explained for the charge in Count Three. Namely, Mr. Crawford told the undercover agent that he couldn't communicate with Mr. Venegas directly and that he used Mr. Gonzalez as an intermediary. That statement—along with the presence of all the co-conspirators on the property—supports a reasonable inference that Mr. Gonzalez facilitated a methamphetamine transaction from Mr.

14

Venegas to Mr. Crawford who, in turn, facilitated a methamphetamine transaction from Mr. Crawford to the undercover agent. And again, if Mr. Gonzalez wasn't involved, why did the transaction take place at his property while he was there? Yes, an innocent explanation might exist. But the court's task here isn't to rule out every possible innocent view of the evidence. *See Wood*, 207 F.3d at 1228.

Similarly, Mr. Crawford distributing methamphetamine to the undercover agent was a natural and probable consequence of Mr. Gonzalez's conspiracy with Mr. Crawford. So, *Pinkerton* liability offers an alternative basis to convict Mr. Gonzalez.

In sum, the court denies Mr. Gonzalez's Motion for a Judgment of Acquittal. The government put forth sufficient evidence for a rational jury to convict Mr. Gonzalez on each of the four drug offense charges.

### V.     Erroneous Jury Instruction Notice

After trial, the court noted a likely error in the jury instructions. Specifically, Jury Instruction Number 12—which instructed the jury on elements of methamphetamine distribution, as charged in Counts Three and Four—contained this passage:

> To meet its burden of proving the first element, the government must prove that Mr. Gonzalez knew that the substance he distributed was a controlled substance. The government can meet this burden by proving either that: (1) Mr. Gonzalez knew that the substance he *possessed with intent to distribute* is listed as a controlled substance under the Controlled Substances Act, even if he did not know the identity of the controlled substance; or (2) Mr. Gonzalez knew that the specific substance was methamphetamine, even if he did not know that methamphetamine is listed as a controlled substance under the Controlled Substances Act. The government need not prove that Mr. Gonzalez knew the precise nature of the controlled substance.

Doc. 171 at 16–17 (emphasis added). The emphasized phrase in this passage instructs the jury that the government could satisfy the first element of this crime—that Mr. Gonzalez knowingly or intentionally distributed a controlled substance—if it proved that Mr. Gonzalez knew that the

15

substance he *possessed with intent to distribute* is listed in the Controlled Substances Act. The court believes that this instruction misstates the law. Instead, the court believes, the instruction should have instructed the jury that the government could satisfy the first element if it proved that Mr. Gonzalez knew that the substance he *distributed* is listed in the Controlled Substances Act.

Error or not, the court has no power to grant Mr. Gonzalez any relief. Fed. R. Crim. P. 33 advisory committee's note to the rule's 1966 amendment provides that a "judge has no power to order a new trial on his own motion . . . he can act only in response to a motion timely made by a defendant." And the court notes that the government never offered any evidence about Mr. Gonzalez's subjective knowledge of the Controlled Substances Act, which presumably it would have done if it had relied on the first option to shoulder its burden. This absence of such a proffer suggests that any error in properly stating the first option was harmless. Still, out of an abundance of caution and transparency, the court notifies the parties of its post-trial discovery.

### VI.    Conclusion

The government adduced sufficient evidence for a rational trier of fact to convict Mr. Gonzalez on all methamphetamine charges in the Superseding Indictment. His sufficiency-of-the-evidence challenge thus falls flat, and the court denies his Motion for a Judgment of Acquittal.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Javier Gonzalez's oral Motion for a Judgment of Acquittal is denied.

**IT IS SO ORDERED.**

**Dated this 2nd day of June, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
